# Pierce *against* Potter.

A sale of land under a *venditioni exponas* upon a judgment for a debt secured by a mortgage is an extinguishment of the lien of the mortgage, and vests a good title in the purchaser.

But if the land be sold to the mortgagee for a sum less than the amount secured by the mortgage, it is not such an extinguishment of the debt as will enable the mortgagor to coerce the entry of satisfaction upon the mortgage, or to maintain an action for a refusal to do so. Even if the debt were extinguished by such sale, the mortgagor could not maintain such action, because he had ceased to be interested in the mortgaged premises.

ERROR to the common pleas of *Crawford* county.

Amos Pierce against Samuel Potter. Action on the case for refusing to enter satisfaction on a mortgage ; in which the following facts were agreed to be considered in the nature of a special verdict.

On the 19th of April 1832 the defendant, the fee simple owner of one hundred and thirty acres of land in Conneaut township, Crawford county, sold and conveyed the same, with the personal property thereon, consisting of hay-stacks, &c., in value 1000 dollars, to the plaintiff for 2500 dollars, including the personal property ; and to secure the payment thereof the plaintiff, on the same day, gave his judgment bond, secured by two certain mortgages, one on the land above mentioned and the other on sixty acres of land in Ohio, both executed and delivered by the said Pierce to Potter. The plaintiff took immediate possession of the land and kept it until sold, as heretofore mentioned ; and the personal property he disposed of to his own benefit: no part of the purchase money for either land or personal property being paid. The defendant entered up judgment on the bond to August term 1834 ; issued a *fieri facias*, on which the land first mentioned was levied and condemned ; and to November term following a writ of *venditioni exponas* was issued, the land sold thereon, and purchased for 131 dollars by the defendant.

In October 1836 the plaintiff served a written notice on the defen-

[Pierce v. Potter.]

dant, requiring him to enter satisfaction of the mortgage, and tendered him 2 dollars for his costs, &c.

In February term 1837 the plaintiff commenced this present action.

The question for the opinion of the court is, whether the plaintiff, under the above statement of facts, is entitled to recover? If so, then judgment is to be entered for him for six cents damages and costs; if not, then judgment to be entered for the defendant.

And it is further agreed that if the court should be of opinion that the defendant would not be at liberty to give evidence under the general issue of the sale of the personal property to the plaintiff, and of its forming part of the 2500 dollars mentioned in the bond and mortgage, then that part of the case stated which relates thereto is not to be taken into consideration by the court.

The court below (Shippen, President) rendered judgment for the defendant.

*Church* and *Galbreath*, for plaintiff in error, on the point of extinction, cited, 2 *Binn.* 142 ; 3 *Yeates* 128 ; 2 *Pow. on Mort.* 488; 16 *Serg. & Rawle* 292 ; 2 *Pow. on Mort.* 551, *note* : any satisfaction is within the meaning of the act; 3 *Penns. Bl.* 492 ; 2 *Penns. Rep.* 174 ; 1 *Penns. Rep.* 474 ; 5 *Watts* 412 ; 2 *Watts* 236.

*Derrickson*, contra, cited, 9 *Serg. & Rawle* 312 ; 4 *Watts* 405, 474.

The opinion of the Court was delivered by

KENNEDY, J.—This action was instituted by the plaintiff in error, in the court below, against the defendant, to recover a forfeiture not exceeding the amount of a mortgage given by the plaintiff to the defendant, securing the payment of 2500 dollars, to be paid in instalments, for not having, within three months after request and a tender of reasonable charges for doing so, entered satisfaction upon the margin of the record of said mortgage.   The plaintiff claims a right to recover under the requisition of an act of assembly passed the 27th of May 1715, the ninth section of which enacts that " any mortgagee of any real or personal estates in this province having received full satisfaction and payment of all such sum and sums of money as are really due to him by such mortgage shall, at the request of the mortgagor, enter satisfaction upon the margin of the record of such mortgage recorded in the said office, which shall forever thereafter discharge, defeat and release the same, and shall, likewise, bar all actions brought or to be brought thereupon."   And then, by the tenth section, it is further enacted, " if such mortgagee, by himself or his attorney, shall not, within three months after request and tender made for his reasonable charges, repair to the said office, and there make such acknowledgement as aforesaid, he, she or they neglecting so to do shall, for every such offence, forfeit and pay unto the *party* or *parties aggrieved* any sum not exceeding the

[Pierce v. Potter.]

mortgage money, to be recovered in any court of record within the province, by bill, plaint or information." In order to maintain this action against the mortgagee, it ought to appear first that he had received " full satisfaction and payment of all such sum and sums of money as were really due to him." But it is not pretended here that the defendant had literally received the amount of the mortgage debt in money. Having, however, become the purchaser of the mortgage land at a judicial sale thereof made by virtue of a writ of *venditioni exponas*; and having thus united in himself both the legal title and the equity of redemption, it is contended that the mortgage not only became thereby extinct, but that the whole debt therein mentioned became satisfied; that, as a satisfaction in full for the debt, the defendant has got the land discharged from the equity of redemption, by its union with the legal title vested in him previously by the mortgage. If it were so that nothing but the equity of redemption was to be considered as actually sold under the *venditioni exponas* to the defendant, the reasoning of the plaintiff would not be without plausibility at least ; but notwithstanding the act of the 6th of April 1830, whereby it is enacted that "from and after the passage of that act, when the lien of a mortgage upon real estate was or should be prior to all other liens upon the same property, except other mortgages, ground rents and the purchase money due to the commonwealth, the lien of such mortgage should not be *destroyed* or *in any way affected* by any sale made by virtue or authority of any writ of *venditioni exponas*." We think that the sale under the *venditioni exponas* here was a disposition of the whole fee-simple estate in the land, including the interest of the mortgagee as well as that of the mortgagor ; and had any third person become the purchaser at the sale, instead of the mortgagee himself, such third person would thereby have become owner of the fee in the land, discharged from the lien and effect of the mortgage, as also all other liens for and on account of debts. For though the words of the act are, that " the lien of such mortgage shall not be destroyed or in any way affected by any sale made by virtue or authority of any writ of *venditioni exponas*," yet when the whole section is considered in reference to this case, it is perfectly obvious that it cannot be held to embrace it. Here the writ of *venditioni exponas* includes the *same debt* mentioned in the mortgage, so that, of necessity, the sale by virtue of it could not but *affect* the lien of the mortgage by reducing, at least, if not wholly discharging the debt, accordingly as the amount bidden at the sale might happen to be less or equal to the amount of the debt. It cannot be supposed that the legislature intended to exceed their power by extending the act to the case of a writ of *venditioni exponas*, grounded upon a judgment in favour of the mortgagee against the mortgagor for the *same debt* secured by the mortgage, because either a reduction or an entire payment of the debt by a sale under the writ of *venditioni exponas* would necessarily destroy or at least affect by lessening the amount the lien of the mortgage. And it was not

[Pierce v. Potter.]

in the power of the legislature to continue the lien of the mortgage after the payment of the debt, though it was produced by a sale under the writ of *venditioni exponas.* This case then must be regarded as standing upon the same ground it would have done had the last mentioned act never been passed; and, according to the practice as also the judicial authorities anterior to the passage of the act, it was a settled rule that a judicial sale, either under a junior mortgage and writ of *levari facias* or a junior judgment and writ of *venditioni exponas,* discharged the land sold of all prior as well as subsequent liens on account of debts, whether created by mortgage, judgment or recognizance; so that the purchaser acquired thereby all the estate which the defendant had in the land relieved from such incumbrances suffered either by himself or those under whom he claimed. Willard *v.* Norris, 2 *Rawle* 56; M'Grew *v.* Lanahan, 1 *Penns. Rep.* 44; M'Lanahan *v.* Wyant, 1 *Penns. Rep.* 112; Hoover *v.* Shields, 2 *Penns. Rep.* 135; Corporation *v.* Wallace, 3 *Rawle* 109. Hence the defendant must be considered as having bought, at the sale made under the *venditioni exponas,* the fee simple estate in the land for the sum of money at which it was struck down to him; but that sum being greatly less than the amount of his judgment or the mortgage debt, it can only be deemed a satisfaction or payment thereof *pro tanto.* It may be, however, that at the sale the impression prevailed that it was only the equity of redemption that was being sold, or otherwise a much larger sum would have been offered by some of the bystanders; but the sale having been perfected, it is too late now to set up the plea of ignorance of the law in order to avoid it. This could only have been done at or before taking the sheriff's acknowledgement of the deed which consummated the sale. But had an objection been made on this ground to the confirmation of the sale by the court, and it had been shown clearly that such was the case, doubtless the court would have interposed and set the sale aside, so that the land might have been sold again upon a correct understanding of the extent of the interest in it that the purchaser would take.

There is, therefore, no pretence for saying that the debt mentioned in the mortgage has been satisfied; and this being the case, it necessarily follows that the plaintiff had no right to require of the defendant, that he should acknowledge satisfaction either upon the margin of the record of the mortgage in the recorder's office or elsewhere; consequently he has no right to maintain this suit.

But even if the sale of the land had produced a sum of money sufficient to satisfy the whole of the mortgage debt, still I do not see upon what ground the plaintiff could maintain this suit. He is not the owner now of the mortgaged land; and has no right or interest in it whatever: of course no right of his in it can be affected by the defendant's refusing to enter satisfaction on the margin of the record of the mortgage as requested. He therefore cannot be said to be *aggrieved* by any neglect or refusal on the part of the defen-

[Pierce v. Potter.]

dant to enter such satisfaction : but, by the express provision of the act, it is only the *party aggrieved* that is authorised to bring suit on account of such neglect or refusal. It may be, according to the decision of this court in Henry *v.* Sims, 1 *Whart. Rep.* 187, if the whole amount of the debt had been raised by the sale and paid out of it, that the plaintiff would have had a right to have required the defendant to enter satisfaction upon the judgment under which the sale was made; and in case of neglect or refusal to do so, would have been entitled to have maintained an action against him. And this, as it appears to me, is going farther than the reason of the law would seem to require : I am rather inclined to think that the legislature only intended to provide for having satisfaction entered in those cases, where the payment of the debt proceeded from the act of the debtor himself or party representing him, and did not intend that the provision should be extended to cases where it was brought about by a judicial proceeding, which remained on record and showed the fact of the debt having been paid and satisfied with as much certainty and conclusiveness as if the creditor had acknowledged it in person upon the record. To apply the act to such cases may occasionally place the creditor in an unpleasant dilemma ; for the moment that the sheriff, or officer to whom the judicial process or execution is directed, has received or made the money of the debtor, the latter becomes thereby forever entirely discharged and released from the debt; and, as regards him, it may be said to have been paid and satisfied, but the creditor has not received it as yet from the officer, who in fact has used the money and is not able to pay it when called on. But before the creditor can collect the money from the officer, the debtor requires him to enter satisfaction upon the record; suppose he does so, is it not an admission that he has been paid the debt? And if so, how can he maintain his suit afterwards against the officer for it ? I do not mean to affirm, that the acknowledgement and satisfaction in such case would bar the creditor's recovery from the officer, but it appears to be sufficient to embarrass the common mind and therefore could not have been intended by the legislature. But admitting the constructive satisfaction of the whole mortgage debt to have taken place here, as contended for by the plaintiff's counsel, it would still be going further than was done in the case of Henry *v.* Sims, to hold that it is such a payment of the debt as comes within the act requiring the creditor to acknowledge satisfaction on the record under the penalty of forfeiting such sum not exceeding the amount of the debt as a jury may choose to inflict. It would be so unreasonable, that it cannot in justice to the legislature be supposed that they could have intended to impose penalties in cases comparatively of little public concern, but attended with much perplexity and real difficulty, raising questions which none except the most eminent of the legal profession are able to solve.

Judgment affirmed,