## RICE et al. vs. WILBURN et al.

VENDOR'S LIEN:   *Not affected by sale under execution of vendee's equity of
     redemption.*
  Where a vendor of real estate, by title bond, recovers judgment at law for
    the purchase money, under which the land is levied on and sold, only
    the equity of redemption passes by the sale, and the vendor's lien may
    be enforced against the purchaser.

APPEAL from *Prairie* Circuit Court in Chancery.

Hon. P. C. DOOLEY, Circuit Judge.

*Hughes & Smith,* for appellants.

WALKER, J.:

The questions of law to be considered in this case arise upon
the following facts, as disclosed by the record :

Albert H. Evans died intestate, the owner in fee of the south
half of section twenty, and the north half of section twenty-
nine, in township one north, range four west, leaving plaintiffs
Amanda, Charles, Emily and John Evans, his children and heirs
at law.   Amanda married plaintiff Rice, and Emily defendant
Crockett.

Rice was appointed guardian for the minor children of Evans,
and, as such, under the authority of an order of court, and in
right of his wife, on the 19th of November, 1859, sold the above
described land to George Washington for $1,920, for the pay-
ment of which Washington executed to Rice three notes for $640
each, payable in future installments, and Rice executed to Wash-
ington his bond, by which he bound himself to Washington to
convey to him the land purchased upon the payment of the
notes so executed.

The first note was paid, the other two were sued upon and
judgment taken for the balance of the purchase money.   Execu-
tions were issued upon the judgments, made returnable to the
12th of March, 1867.

Rice et al. vs. Wilburn et al.

These executions were levied upon part of the land contracted to Washington, were advertised to be sold on the 11th of March, but no sale was made until the 13th, the day after the executions were made returnable, at which time they were bid off to defendant Wilburn for the sum of $12.

It further appears that, before that time, Washington's creditor's obtained judgment against him, upon which executions were issued, and were levied upon the same lands, and, on the 11th of March, two days before the sale under Rice's execution, were sold to Fanaley, who conveyed them to defendant Wilburn.

Washington is dead; his widow and heirs and Wilburn are made defendants.

Plaintiffs by their bill seek to subject the land to the payment of their debt, and claim a specific lien upon it for that purpose.

Defendant Wilburn claimed the land purchased by him at execution sale as his absolute property, free from the encumbrance of the vendor's lien. The court below sustained his claim, refused to subject the land to sale, but decreed in favor of plaintiff as to all of the land contracted to Washington and not sold at execution sale.

From so much of the decree as held the plaintiff's lien discharged on the land sold under execution, plaintiffs appealed to this court.

The question of law presented is, did the sale of the mortgaged property, made by Rice to satisfy the debts contracted for the purchase of the land, and upon which a specific lien, equivalent to a mortgage lien, was reserved, discharge his lien upon the property sold? Was it an absolute sale of the property itself, or only of Washington's equity of redemption? Upon this point there is some conflict of decisions.

In the case of *Fordick* v. *Risk*, 15 Ohio, 84, it was held, that where the mortgagee causes the land mortgaged to be sold under

execution, the purchaser takes an indefeasible title, though the price paid is not sufficient to pay the debt; and such also is the decision of the Supreme Court of Pennsylvania in *Pierce* v. *Potter*, 7 Watts, 475.

But several of the other State courts hold differently, and, as we think, upon more equitable grounds. In *Deane* v. *Carr* 2 Green's Ch. Rep., 513, it is held, that when a mortgagee recovers judgment on the mortgage debt, upon sale of the mortgaged property the debt and the lien are only extinquished to the amount bid and paid.

*Jackson* v. *Hull*, 10 Johns., 481, is a case directly in point. The Supreme Court say: " In this case the creditor sues on the bond and obtains judgment and execution, and the execution strictly reaches only the remaining interest of the mortgagor in the land. It reaches the equity of redemption. That is all that was sold in the present case, and was all that the defendant meant to purchase; for, at the time of the purchase, he knew of the existence of the mortgage. * * * The sale was only for the *residuum* of interest remaining in the mortgagee after the execution of his mortgage. The mortgagee's interest is no further touched by the sale than the purchase money of the equity of redemption may go to diminish the amount of the debt." The Supreme Court of Mississippi, and of several of the other States, have given their assent to this view of the case, and it is one which we think more fully applies in the case under consideration than in ordinary mortgages. Ordinarily, the mortgagor, until foreclosure, as to third persons, remains the owner of the land. In the case before us there was strictly no sale, but a contract to sell and convey by deed upon the payment of the purchase money. The legal title all the while remained in Rice, and, never having been parted with, as well remarked by Chief Justice Watkins, in the case of *Moore & Cail* v. *Irwin & Anders*, 14 Ark., 634, " It makes no difference whether the bond for title

be recorded or not.　If recorded, it becomes notice; if not on record, that circumstance would, of itself, be sufficient to put any subsequent purchaser or encumbrancer upon inquiry."

Many of the States, as well as our own, have statutes which authorize the levy and sale of equitable estate.　Such, most strictly, was the estate held by Washington; he had an equitable right under his contract to the land upon the payment of the money.　If this right is raised to that of mortgagor and mortgagee the result is the same.　Place Washington in the attitude of mortgagor, executing a mortgage to Rice to secure the payment of the purchase money, as was held to be the legal effect of such contracts in *Smith* v. *Robinson*, 13 Ark., 534, and still the right of the mortgagor (Washington) was liable to be taken in execution.　The levy is made, not strictly upon the lands, but upon the equity of redemption, it was this alone that Wilburn purchased.　The legal presumption is, that he only purchased or intended to purchase such interest as the defendant in execution had.　Such was the decision of this court in *Hanger & Moody* v. *State*, 27 Ark., 673.

But we find that, in this case, on the 9th of April, 1861, judgment was rendered in the Circuit Court of the United States for the Eastern District of Arkansas, against Washington, upon which execution was issued, and by the marshal of the district, levied on the lands in controversy on the 5th of January, 1867, and thereafter, on the 4th day of March, 1867, sold to Fanaley, and by him to defendant Wilburn, who, three days after this sale, bid for and bought the same land under an execution in favor of Rice for the price of twelve dollars.　Conceding the sale of the 11th of March to be valid (and we are not collaterally permitted to question its validity), then whatever estate, whether legal or equitable, which Washington held, passed with it, but, of course, subject to the prior lien of Rice for the purchase

money, and, consequently, at the sale made on the 13th March, under Rice's judgment, there was nothing left to be sold belonging to Washington. Hilliard, in his work on mortgages, page 66, says: "While a mortgagor is considered as owner against all but the mortgagee, a debtor, after such levy, has not strictly any estate or interest in the land. He is not a freeholder; he has only a possibility or right to an estate on the payment of a certain sum of money. The law presumes that he has received the full value of his estate, and the right of redemption still reserved to him is a mere personal privilege to keep his own land if he does not wish to part with it at its full value."

Looking beyond this to the sale made under Rice's execution, after the return day of the execution, and without intending to express any opinion with regard to sales of personal property which remain in custody of the sheriff after the return day (in support of the validity of which there are some adjudicated cases), we very much question the validity of the sale of real estate after the return day of the writ, and without a writ of *venditioni exponas* directing the sale of the property.

Without extending our inquiry, upon the present occasion, as to the validity of a sale of real estate made after the return day of the execution, and without a *ven ex.* for that purpose, we feel satisfied, upon principles of equity and upon the authority of the decisions to which we have referred, in holding that when the payment of a debt is secured by a mortgage lien on property, or by an express reservation in the contract of sale, and judgment at law is rendered upon the debt so secured, the equity of redemption, being all the interest that remains in the mortgagor, may be be levied upon and sold in satisfaction of the debt, without discharging the lien thus reserved by contract.

It is the equitable right of redemption, not the land, which is sold, for that is the only interest in the mortgagor, and, as a consequence, all that the purchaser buys.

Whether the purchaser, by the payment of the entire mortgage debt, thus discharging the lien, may be subrogated to all of the rights of the mortgagor, or whether the mortgagor may not, after sale of the property, by discharging the mortgage debt and paying to the purchaser the money bid on the land, place himself in position to assert his equitable rights, are questions not now before us for consideration.

Let the decree of the court below be reversed and set aside and the cause remanded, with instructions to render a decree in favor of plaintiffs, in accordance with the prayer of their bill.